UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-cr-17-HSM-SKL |
| | ) | |
| ROBERT CHAD SHORT, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant Robert Chad Short ("Defendant") [Doc. 14], in which Defendant seeks to suppress the evidence, a shotgun, seized during a search of his residence. Defendant now argues the search was illegal because the officer did not obtain proper consent to search his home. Plaintiff United States of America ("the government") has filed a response in opposition [Doc. 20]. The motion to suppress was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b) [Doc. 15]. An evidentiary hearing on the motion to suppress was held on October 7, 2014, and post-hearing briefs were timely submitted by each party [Docs. 27 & 28]. After fully considering the evidence and argument, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

## I.      FACTUAL BACKGROUND

The government called Lawrence E. Campbell, Jr., a narcotics investigator with the Moore County Sheriff's Department, as the sole witness at the evidentiary hearing. Pertinent testimony from Agent Campbell is summarized below.

Agent Campbell has 30 years of law enforcement experience. On the day at issue,

December 18, 2013, Agent Campbell and fellow officer Shane Taylor traveled together in Agent Campbell's unmarked vehicle to Defendant's residence, which is a single-wide trailer, to attempt to find and arrest Defendant on a "failure to appear" warrant. On the day at issue, Agent Campbell was already familiar with Defendant and previously had been to Defendant's trailer on official business.[1]

Upon arrival, Officer Taylor went to the back of the trailer in the event Defendant attempted to flee from the residence, and Agent Campbell knocked on the front door and announced his presence. Defendant's girlfriend, "Kateri,"[2] answered the front door of the trailer after several minutes. Agent Campbell was familiar with Kateri and knew that she and a young child resided with Defendant. Agent Campbell asked if Defendant was home. Kateri responded, "No. Why?" Agent Campbell replied that he was there to execute an outstanding warrant for Defendant's arrest based on his failure to appear and asked where Defendant was. Kateri said he was "at his dad's." Agent Campbell then asked Kateri, "Well, do you care if I come in and talk to you?" She said, "No" indicating consent. Agent Campbell never raised his voice or displayed any weapons when speaking with Kateri.

Agent Campbell entered the trailer and immediately walked back to the bedroom to the right with Kateri where a sick child was lying on the bed. The interior of the cramped trailer was very dim and there appeared to be no lights turned on. Because he could not see well, Agent Campbell asked Kateri to turn on a light, and she said the lights were not working. This seemed odd to Agent Campbell because he saw an electric lamp. Agent Campbell again asked Kateri

---

[1] Defendant's Exhibit 3 is a photograph of the outside of the trailer and Defendant's Exhibit 4 is a photograph of a portion of the inside of the trailer.

[2] Her last name is either Lundquist or Hollingsworth according to the briefs and attorneys, but Agent Campbell did not know her last name so she was referred to by her first name in the hearing for the most part and will be referred to by her first name herein.

where Defendant was and she said he was at his father's house. She then complained that they had been dealing with people cooking methamphetamine underneath their trailer. Agent Campbell then said, "Well, do you care if I look around?" Kateri again responded, "No" indicating consent.

The bedroom closet door was open. Agent Campbell took one step forward and he observed what appeared to be a person's foot inside the closet to the right. The closet was tiny, shallow, and narrow. Agent Campbell could not see the rest of the person in the closet. He drew his weapon and yelled for the person in the closet, who ended up being the Defendant, to get down on the ground. Defendant responded that he did not know it was "Larry" (i.e., Agent Campbell) and made reference to people who had been cooking methamphetamine under the trailer. Agent Campbell re-holstered his gun within 25 seconds of drawing it, and arrested and handcuffed Defendant on the failure to appear warrant. Agent Campbell agreed that whenever his weapon is drawn there is an increased possibility of danger to him and others present.

Agent Campbell then asked Defendant if he could look around the trailer and Defendant asked if he had a warrant. Agent Campbell told Defendant he did not have a warrant to search, but indicated he would look around based on complaints by Defendant and Kateri that people were cooking methamphetamine underneath their trailer if Defendant wanted him to do so. Defendant then consented to the search.

As relevant here, Agent Campbell found a loaded shotgun inside the closet where Defendant had been hiding. Agent Campbell testified that based on past experience with Defendant, he was aware that Defendant was a convicted felon and that it was illegal for Defendant to possess the shotgun, so Agent Campbell seized it as evidence. Less than ten minutes passed from the time Agent Campbell entered the trailer until he found the shotgun. After seizure of the

shotgun, Defendant was transported to the jail.

Agent Campbell's entire offense report of the incident [Defendant's Exhibit 1] states: "On above Date While searching the residence of the defendant found a loaded Mossburg 20 ga shotgun, located inside the closet in which defendant was hiding.  Upon further investigation found the weapon S# 185d-a to have been stolen from Grundy Co, MO. "   Agent Campbell stated his report did not need to be more detailed under the circumstances and, at the time he wrote the report, he had no reason to think the circumstances of the search would be disputed.   Agent Campbell is not required to report that he had drawn his gun.

At some point prior to writing his report, he was in contact with Agent Stephen Gordy of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").   An ATF Report of Investigation was also entered into evidence as Defendant's Exhibit 2.   Agent Campbell said he would have called in the above-noted information about the shotgun and someone else would have determined the gun was stolen.   He did not know how it was determined that this gun was stolen since he did not list a serial number on his report and the ATF report states there is no serial number.   Agent Campbell could not recall any unique identifiers associated with the gun.

Agent Campbell testified he spoke with Assistant United States Attorney Michael Porter about that fact that there was a motion to suppress filed and to prepare for the hearing, but he denied that he provided a factual summary to be used in connection with the motion.

## II.   ANALYSIS

In his motion to suppress, Defendant argued the officers had no legal basis for a protective sweep after Defendant stepped out of the closet and that none of the exceptions to a warrant requirement, such as consent or plain view, were present in this case.   In his post-hearing brief, Defendant's argument centers on the issue of the credibility of Agent

Campbell's testimony that Defendant consented to the search. Defendant argues Agent Campbell's testimony about consent is not credible because his testimony is starkly different from the version of events cast in the government's original response to the motion to suppress and is not reflected in Agent Campbell's two-sentence report. The government's post-hearing brief counters that Agent Campbell's testimony establishes that Kateri provided the initial consent for Agent Campbell to enter and search the home for Defendant and, upon discovering Defendant in a closet, Agent Campbell obtained consent from Defendant to search the residence for evidence related to methamphetamine manufacturing. Thus, the government contends that because the gun was discovered during a consensual search, Defendant's motion fails.

The Fourth Amendment provides "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.[3] The Supreme Court has long recognized that "[a] man's home is his castle" and, specifically, that a right to be secure in one's home from intrusion is embodied by the Fourth Amendment. *Minnesota v. Carter*, 525 U.S. 83, 94 (1998) (Scalia, J., concurring) (emphasis omitted); *see United States v. Nelson*, 459 F.2d 884, 885 (6th Cir. 1972) (noting that the Fourth Amendment exists to ensure the inviolability of an individual's home). The Fourth Amendment prohibits a search of a suspect's residence without a proper warrant except in limited circumstances, such as a search conducted pursuant to consent. *See Florida v. Royer*, 460 U.S. 491, 497 (1983); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

"It is the Government's burden, by a preponderance of the evidence, to show through

---

[3] "[A] defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001) (citing *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988)). It is undisputed that Defendant had a legitimate expectation of privacy in the residence.

clear and positive testimony that valid consent was obtained." *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010) (internal quotation marks omitted). Consent is valid only if it is voluntary—i.e., "unequivocal, specific and intelligently given, [and] uncontaminated by any duress or coercion." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (citations and internal quotation marks omitted). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion . . . is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227; *accord Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *United States v. McCauley*, 548 F.3d 440, 446 (6th Cir. 2008). Factors to be considered when examining the totality of the circumstances include: "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999); *see also Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 830 (6th Cir. 2007) (quoting *United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988)) ("Relevant factors in this analysis include the suspect's 'youth, lack of education or low intelligence, the lack of any warnings regarding the accused's constitutional rights, as well as evidence of duress or coercion, such as, deprivation of food or sleep and prolonged detention or questioning.'"); *United States v. Haynes*, 301 F.3d 669, 682 n.6 (6th Cir. 2002) (finding that the suspect's "experience with the criminal justice system and lack of rough treatment" were factors relevant in assessing the voluntariness of consent). During the hearing, and as confirmed by his post-hearing brief, Defendant stated he is not contesting any of the factors to be considered when examining the totality of the circumstances of a valid consent; rather, he is contesting that the government met its burden of proof that he or Kateri ever gave

any consent.

Defendant's main argument at this point is that Agent Campbell's testimony does not meet the government's burden of proof to show consent because Agent Campbell's testimony is contradicted by the government's own prehearing response to the motion to suppress. Defendant argues there is essentially no police report to rely upon given the brevity of the offense report prepared by Agent Campbell. Defendant claims he "was forced to rely heavily on the factual summary prepared by the government, as it included vastly more detail than the report prepared closest in time to the incident." [Doc. 25, Page ID # 137]. The Court agrees with the government that this argument ignores that Defendant and his girlfriend were both present during the incident and this argument does not further Defendant's cause.

Contrasting the inconsistencies between Agent Campbell's report, his testimony, and the government's response, Defendant argues Agent Campbell is not credible because he made no mention of having drawn his service weapon in his report even though he conceded during the hearing that being forced to draw your weapon makes an arrest potentially more dangerous for him and others around him, especially a young child. Defendant argues that surely the fact that a weapon was drawn should have been noted in the offense report, if events actually did occur as outlined in either the government's response or Agent Campbell's testimony. Defendant also argues that while the government's response paints a picture of tense moments wherein Agent Campbell drew his service weapon in a room with low visibility in which a small child was present and discovered Defendant hiding in a closet with a loaded weapon touching him, Agent Campbell's report reflects no heightened tension.

Next, Defendant argues Agent Campbell's report notes that the shotgun was found "while searching the residence of the defendant . . . located inside the closet in which the defendant was

hiding." Defendant concedes this does not contradict Agent Campbell's testimony, but argues it does contradict the government's response which claims Agent Campbell noticed the loaded 20-gauge shotgun touching Defendant while he was still in the closet.

Defendant challenges Agent Campbell's credibility because the report, like his testimony, indicates an entirely different scenario from the government's prehearing brief. Defendant argues that if Agent Campbell had actually found Defendant in the closet with a loaded gun next to him, as summarized in the government's prehearing brief, it would have been extremely unlikely for Agent Campbell to omit this from his report, and to have re-holstered his gun within 25 seconds (i.e., before disarming Defendant). Defendant also argues that the second sentence of Agent Campbell's report, in which he notes that the gun was reported stolen, was proven false by Agent Campbell's acknowledgment at the hearing that the shotgun seized from Defendant's residence had no serial number.

It is true that neither Agent Campbell's report nor the government's prehearing brief makes any mention of Defendant's consent to search. As argued by Defendant, the government's response is instead focused upon Kateri's consent and upon a scenario where Agent Campbell saw the shotgun touching Defendant as he hid in the closet. Defendant's argument that the "material differences between Agent Campbell's report, testimony, and the government's response cast doubt on [Agent Campbell's] credibility as to all aspects of his testimony, including whether Kateri or [Defendant] consented to the search of their residence" [Doc. 25, Page ID # 139], however, fails because the government's prehearing brief is not evidence.

The government utterly failed to explain how or why it got the facts so wrong in its unsworn prehearing brief but, in its post-hearing brief, it does cite to several cases supporting its

argument that its prehearing brief is not evidence [Doc. 28, Page ID # 153].   The Court agrees

that the government's unsworn prehearing brief in this case does not establish that *Agent

Campbell* lacks credibility.   *See United States v. Parrilla*, No. 13 Cr. 360(AJN), 2014 WL

1621487, at *4 (S.D.N.Y. Apr. 22, 2014) ("[Defendant's] assertion, contained not in his

affidavit, but his memorandum of law . . . is an insufficient attorney allegation that cannot

provide the Court with a basis for making a finding of fact.") (internal quotation marks and

citation omitted); *United States v. Marquez*, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005) (noting

the government's factual contentions were "based on unsworn statements made by the Assistant

United States Attorney in the Government's Memorandum of Law," and holding that such

"attorney allegations" "cannot provide the Court with a basis for making a finding of fact.").

*See also Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003) (holding, in the context

of a summary judgment motion, that a memorandum of law "is not evidence at all").   While it is

troubling that the prehearing brief submitted by the government was contrary to Agent

Campbell's sworn testimony on key aspects of the incident, I do not find this contradiction to be

a reflection on *Agent Campbell's* credibility, especially in the absence of any evidence that rebuts

his account of events.

In support of his credibility argument, Defendant cites only to *United States v. Haynes*,

301 F.3d 669 (6th Cir. 2002).   In *Haynes*, the Sixth Circuit held that the district court erred in

crediting two officers' testimony which had been discredited by their own inconsistent testimony

and the contrary testimony of independent witnesses. *Id*. at 680-81. Defendant argues Agent

Campbell's contradictions of himself are significant enough for this Court to reach the same

result, but Defendant points to very few such contradictions.   Instead, the major contradiction

seems to be between the government's prehearing brief writer, AUSA Porter, and the testimony

of Agent Campbell, which is not contradicted by his brief incident report. True, Agent Campbell acknowledged that without a serial number or unique characteristic for the gun, there would be no way *for him* to determine that a gun was reported stolen, but there was no testimony that it was impossible for ATF or anyone else to make such a determination in this case. Defendant provided no *evidence* to contradict Agent Campbell's versions of events even though three other adults (i.e., Defendant, Kateri, and Officer Taylor) were present at relevant times. The *Haynes* case simply does not address this issue or support Defendant's argument.

A court is given wide latitude in making its credibility determinations. *Haynes*, 301 F.3d at 679. In assessing credibility, a court considers numerous factors, ultimately relying on the common sense tests of reason and logic. *See United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005). I **FIND** Agent Campbell's demeanor, his descriptive account of the day's events, and his overall impression all support my finding that he gave credible testimony. Defendant's arguments to the contrary are weak as they appear to be more related to the government's apparent carelessness in submitting a prehearing brief than they are related to Agent Campbell's credibility. Agent Campbell's testimony is consistent with his report. While it is a very brief report, his explanation for the report's brevity was reasonable. His inability to explain how ATF determined the shotgun was stolen is not a reflection on his credibility. There was no evidence presented that Agent Campbell provided a factual summary for or reviewed the prehearing brief before it was filed.

Accordingly, under the totality of the circumstances, I **FIND** Agent Campbell credibly testified as to the consent to search he obtained from both Kateri and Defendant.

## III.   CONCLUSION

For the reasons stated above, I **RECOMMEND**[4] that Defendant's motion to suppress [Doc. 14] be **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party.   Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure.   Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).   The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general.   *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).   Only specific objections are reserved for appellate review.   *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).